## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**ARMOR HOLDINGS, INC,**

            **v.**

**AMARO GONCALVES, et al.**
        *Interested Parties,*

            **v.**

**UNITED STATES OF AMERICA,**
        *Respondent.*

**Case No. 1:10-MC-367  (RJL)**
**[Related to No. 1:09-CR-335 (RJL)]**

### JOHN AND JEANA MUSHRIQUIS' OPPOSITION TO
### ARMOR HOLDINGS, INC.'S APPLICATION FOR RELIEF

Defendants John and Jeana Mushriqui ("the Mushriquis"), by and through undersigned

counsel, hereby oppose Armor Holdings, Inc.'s ("Armor") Application for Relief Pursuant to

Local Criminal Rule ("LCrR") 57.6 ("Armor's Application").

Armor's Application advances no legitimate grounds for denying the defendants in

*United States v. Goncalves* discovery of the documents Armor voluntarily produced to the

Department of Justice ("DOJ") and the Securities and Exchange Commission ("SEC").   Armor's

Application, however, seeks to delay this discovery, and possibly prevent it altogether, by

insisting that Armor's attorneys be the arbiter of what particular Armor documents are material

to the defenses in the *Goncalves* case, as well as to determine when the defendants have received

"enough" impeachment material.   Remarkably, Armor argues that its attorneys must wield this

authority even where the government itself has conceded the defendants' right to discover *all* of the Armor documents.  And, the protective order proposed by Armor would not only vest its attorneys with powers normally exercised by the government and the Court, it would also have the effect of restoring privileges Armor waived more than three years ago.

Armor's Application constitutes a grossly improper attempt to interfere with the defendants' rights to a fair and speedy trial.  When Armor produced its documents to the government in 2007, the DOJ and SEC were adversaries conducting an investigation that might have resulted in criminal charges and civil claims against Armor and/or its employees.  Armor did not receive any commitment from the government that it would not disclose Armor's documents in subsequent proceedings.  In these circumstances, Armor waived any applicable privileges and forfeited any claim that this material could be withheld on confidentiality grounds. Moreover, Armor effectively concedes its inability to support its vague claims that some of its documents are privileged or "sensitive" by failing to submit a privilege log or to identify any proprietary or trade secret information contained in those documents.

Armor's Application identifies sixteen (16) categories of documents relating to its former employee Richard Bistrong that were produced to the government and which, even Armor admits, are material and unprotected by any privileges.  The Court should direct the government immediately to produce those documents to the *Goncalves* defendants, subject only to the condition that use of the documents be limited to their respective defenses in that criminal case. All other Armor documents in the possession of the government that refer or relate to Bistrong – including his email files, hard drive and documents once located in his office at Armor – should also be produced to the defendants subject to a simple protective order modeled on the one entered by this Court in *United States v. Thompson*, No. 1:06-CR-288 (RJL), [Dkt. No. 38].

## I.   <u>Background</u>

The events leading to Armor's termination of Bistrong and voluntary disclosure to the government of historical documents relating to Bistrong's illicit business dealing, and materials generated by Armor's counsel in the ensuing internal investigation, are well-described in pleadings filed in the *Goncalves* case and will not be repeated here.  *See, e.g.* Giordanella's Motion to Compel the Government to Comply With Its Discovery Obligations [Dkt. No. 62] at 1-4; Mushriquis' Joint Motion to Compel Discovery [Dkt. No. 65] at 9-10; Government Response to Motions to Compel [Dkt. No. 103] ("Gov't Resp.") at 36-38.  It suffices to note that Armor began its internal investigation in or about February 2007, terminated Bistrong later that same month, and soon thereafter began voluntarily disclosing the above-mentioned documents and information to the DOJ and the SEC.  The obvious purpose of this voluntary disclosure strategy was for Armor to curry favor with the government, and the strategy apparently was a successful one.  Despite the substantial evidence of Foreign Corrupt Practices Act ("FCPA") violations and other crimes committed by Bistrong on behalf of Armor, it appears that no charges were ever filed by the government against Armor.

Armor took steps to remove historical privileged information – i.e., pre-investigation communications between Bistrong or other Armor employees and Armor counsel in the regular course of business – from the documents Armor produced to the government.  For example, Armor's counsel actually reviewed 5 million pages of documents before producing these documents to the government.  Armor's App. at 3.  Further, before producing Bistrong's email file, hard drive and other electronic data, Armor's successor-in-interest, BAE Systems AH, Inc. ("BAE"), applied search terms to this data – the names and email addresses of its attorneys – to locate and redact any privileged communications.  Armor's App., Ex. D, Appendix A to Non-

Waiver and Inadvertent Disclosure Agreement for the Disclosure of Electronically Stored Information.

However, the material generated by Armor's attorneys during the course of their internal investigation was disclosed to the government without redaction or limitation.  Although the memoranda of witness interviews prepared by counsel might normally be afforded work product protection, Armor's counsel "voluntarily" produced their interview memoranda to the DOJ and SEC, expressly stating that Armor and its counsel "waive[d]" any work production protection. *See, e.g.* Armor's App., Ex. B, April 27, 2007 K&L Gates Letter to DOJ at 3.   Because Armor has only included selected correspondence with the government as attachments to Armor's Application, it is not known whether Armor's counsel also made written or oral reports to the government regarding the internal investigation.  Any attorney-client or work product privilege otherwise applicable to such reports would have likewise been waived upon disclosure to the government.

Armor's Application cites fairness principles as the basis for the relief it requests, but its calculated delay has impaired the fair trial rights of the Mushriquis.  Armor waited nearly four months before seeking the relief requested in its Application.  The Mushriquis' initial discovery letter requested production of the Armor documents that were voluntarily disclosed to the government.  *See* Mushriqui Mot. [Dkt. No. 65], Ex. A, February 16, 2010 Letter to Hank Walther.  Presumably, government counsel promptly notified Armor and its counsel of the Mushriquis' request.  In any event, no later than April 1, 2010, government counsel was discussing with Armor's counsel the Mushriquis' request and Armor's position that the documents requested were confidential and "potentially privileged."  April 1, 2010 United States' Notice Regarding Discovery [Dkt. No. 29] at 5.

Barely 24 hours before the *Goncalves* defendants' motions to compel were due, counsel for Armor notified the government of the categories of Armor documents that it would "authorize" the government to produce to the Mushriquis.  Gov't Response, [Dkt. 103], Ex. 3, May 12, 2010 WilmerHale Letter to DOJ.   However, Armor's "authorization:" was linked to two extraordinary conditions set forth in a proposed protective order:  (1) *all* defendants must agree to forgo requests for immediate production of other Armor documents; and (2) *all* defendants must abandon the argument that Armor had waived any applicable privileges by voluntarily producing its documents to the government.  *Id.* at 2-3.  Then, Armor delayed *an additional three weeks* before filing the instant Application.   Armor's dilatory actions, and unreasonable demands, have substantially contributed to the Mushriquis' inability to obtain promptly the discovery to which they are due and facilitated the government's violation of the Mushriquis' speedy trial rights.

## II.   Argument

### A.   Armor Lacks Standing To Interpose Objections Based On Rule 16 Or *Brady* To Discovery Of Its Documents That Are In The Possession Of The Government.

Armor's Application is rooted in the notion that the *Goncalves* defendants are not entitled to most of the Armor documents because the defendant's requests fall beyond the scope of Rule 16 and *Brady*.  *See, e.g.* Armor App. at 5 (arguing temporal limitations), 8 (purporting to identify "Defendants' real needs"), and 13 (characterizing defendants' discovery requests as a "fishing expedition").  This notion not only is unsupported by any of the case authority cited in Armor's Application, it also ignores the fact that the government has *conceded*  defendants' entitlement to *all* the Armor documents.  *E.g.*, Gov't Resp. at 40 ("The government repeatedly has stated that it does not object to the production of any of the Armor Holdings materials to the defendants.").

Armor has no standing to argue about the scope of Rule 16 or *Brady*, and none of the cases cited by Armor Holdings (or the government) hold to the contrary.   The primary authority relied upon by Armor, *United States v. Thompson*, 562 F.3d 387 (D.C. Cir. 2009), recognized only that a company which makes a voluntary disclosure to the government may subsequently seek to enforce a confidentiality agreement it claimed to have made with the government when, in related criminal proceedings, a defendant seeks access to documents within the scope of the supposed confidentiality agreement.  *Thompson* certainly did not recognize any right on the part of the petitioner there – The Williams Companies – to argue that defendant-Thompson did not "need" the Williams documents.  Moreover, in contrast to the circumstances at issue in *Thompson*, the government here has not represented to the Court that there was an express agreement with Armor to withhold its documents from discovery in related criminal proceedings. In any event, Rule 16 and *Brady* issues are the exclusive province of the parties and the Court.

Even if Armor had standing to make arguments regarding the scope of criminal discovery, the case authority it relies upon is inapposite.  All but two of the cases cited by Armor, *see* Armor's App. at 16-18, were decided in the post-trial context and considered whether "had the evidence been disclosed to the defense, the results of the proceedings would have been different."  *See. e.g. United States v. Graham*, 83 F.3d 1466, 1473-74 (D.C. Cir. 1996).  None of these decisions considered a defendant's entitlement to particular evidence in the pre-trial context.  The only two pre-trial decisions cited by Armor – *United States v. George*, 786 F. Supp. 56, 58 (D.D.C. 1992) and *United States v. Felt*, 491 F.Supp. 179, 186 (D.D.C. 1979) – both involved classified and/or national defense information, the disclosure of which would risk impairment of relationships with foreign intelligence agencies or otherwise harm national defense interests.  With all due respect, disclosure of the documentary evidence of Armor's

criminal law violations, committed through its agent Bistrong, is not likely to visit any harm on Armor, much less injure the U.S. national security.[1]

### B.  Armor Has Not Supported Its Vague Claims That Its Documents Contain Privileged Or Proprietary Information.

It was incumbent upon Armor to come forward with a showing that specific documents it disclosed to the government were – and still are – privileged.  *In re Sealed Case*, 737 F.2d 94, 99 (D.C. Cir. 1984) ("It remains the claimant's burden . . . to present to the court sufficient facts to establish the privilege.").  Armor's Application does not append a privilege log or provide some other form of particularized justification for its assertion that a protective order is necessary to protect against disclosure of privileged or proprietary information.  Vague and generalized references to documents "that are irrelevant, contain confidential business information, and/or contain privileged information," *see* Armor's App. at 1, fall well short of the kind of facts needed to establish that the attorney-client or work product privilege, or even proprietary information claims, are being properly invoked.

In fact, details found in Armor's Application belie its claim that its documents contain privileged or proprietary information which "would take approximately 130,000 hours and would cost upwards of $10 million" to locate and redact.  Armor App. at 15 n.11.  First, approximately 5 million pages of the documents the government is withholding from discovery at the direction of Armor's counsel were reviewed for privilege *prior to disclosure* to the

---

[1] An apt example of how Armor seeks to blur the consequences of disclosing merely embarrassing information, as opposed to information that is actually privileged or proprietary, can be found in footnote 10 of the Armor Application. There, Armor cites, as a reason it needs the one-sided protective order it has proposed, the disclosure in an exhibit to the Mushriquis' Motion to Compel of an email from Armor's counsel to the DOJ. There is no privileged or proprietary information in that email, although it does make reference to measures undertaken by Armor to uncover evidence of other possible criminal violations.  Though Armor may be embarrassed by public revelations of its crimes, it cannot be allowed to interfere with the discovery rights of individuals who, unlike Armor, have not been found to have engaged in any wrongdoing.

government.  Armor App. at 3 ("Armor produced approximately 5 million pages of reviewed documents to the DOJ and SEC.").  Second, the Bistrong email file and hard drive were subjected to an extensive word search, using the names and email addresses of Armor's attorneys, to locate and remove privileged information *prior to disclosure* to the government.  *See* Armor's App., Ex. D, Appendix A to Non-Waiver and Inadvertent Disclosure Agreement for the Disclosure of Electronically Stored Information.  That there is some theoretical possibility that these reviews missed a handful of historical (pre-investigation) communications between Bistrong and Armor's counsel does not begin to support Armor's claim that it may instruct the government to withhold Bistrong-related documents from the *Goncalves* defendants, or that it is necessary to require these defendants to abandon substantial legal arguments regarding Armor's waiver of privileges in order to gain limited access to the documents.

As a practical matter, there is virtually no chance that, if the *Goncalves* defendants are given access to Bistrong's hard copy and electronic documents, any historical communications between Bistrong and Armor's counsel will be disclosed in the *Goncalves* proceedings. Presumably, any such communications between Bistrong and Armor's counsel would not have concerned Bistrong's bribery, embezzlement and money laundering schemes, or any other wrongdoing.  Thus, if any historical communications with Armor's counsel slipped through the privilege filters and are included in the discovery provided to counsel for the *Goncalves* defendants, these communication will play no role in the trial of this case.[2]

---

[2] Armor's Application does not appear to argue that the mere risk of possible disclosure of Armor's privileged information to the various defense counsel in the *Goncalves* case, without more, justifies withholding from discovery Bistrong's electronic and hard copy documents.  Such an argument would not survive even minimal scrutiny.  Armor certainly did not hesitate to incur the risk that its potentially privileged information would be seen by *government* counsel when Armor voluntarily produced this material in 2007.  Just as government counsel were trusted to honor the terms of the September 13, 2007 Clawback Agreement, *see* Armor's Application at Ex. C, there is no reason to question the willingness or ability of defense counsel in the *Goncalves* case to abide by the terms of a *Thompson*-style protective order.  *See* discussion in Section II.D below.

It has been nearly three years since Armor voluntarily disclosed its documents to the DOJ and the SEC, four months since Armor became aware of the Mushriquis' discovery request for the Bistrong-related documents, and more than three weeks since the Mushriquis filed their motion to compel that discovery.  If Armor has chosen, for tactical or economic reasons, not to conduct during these several years or months whatever additional searches it deems necessary to identify and isolate other privileged or proprietary information that may be contained in those documents, Armor should bear the potential consequences of that decision and not be allowed to use them to deprive the *Goncalves* defendants of the discovery they are due.

C.    **The *Goncalves* Defendants Are Entitled To Immediate Discovery Of The Sixteen Categories Of Documents That Armor Concedes Are Material And Non-Privileged.**

Armor's Application identifies sixteen categories of Bistrong-related documents that Armor reviewed for privilege before disclosing them to the government.  Armor App. at 8-9. And even Armor acknowledges that these documents are appropriate impeachment material.  *Id.* at 12 ("These documents provide exactly the sort of potential impeachment Defendants assert they are seeking.").  *Id.* at 12.  There is no justification for delaying further the delivery of  these documents to the *Goncalves* defendants, or imposing upon defendants the onerous and one-sided protective order proposed by Armor as a condition of the defendants obtaining access.

As explained above, these sixteen categories of documents contain no privileged communications, and Armor has identified no trade secrets, proprietary, or current financial information that is contained in these documents.[3]  For these reasons, no protective order is

---

[3] By Armor's own account, its documents relate to business activities in the period 2001-2006.  Armor's App. at 5. And Armor no longer exists as a separate entity, having been acquired by BAE Systems, Inc. in July 2007.  *Id.* at 3 n.1. Thus, it is highly unlikely that any of the Armor documents at issue will contain any current pricing information or other competitive information.  Perhaps this is why Armor's Application recites only that its documents "*may* contain confidential business information," *id.* at 13 (emphasis added), and not that they actually do.

needed to govern the *Goncalves* defendants' use of these documents.  A simple provision in the Order directing the government to deliver these documents to defendants that limits use of them to the *Goncalves* proceedings is the only limitation that is necessary or appropriate.

The listing of these sixteen categories in the Court's Order should deviate in one important respect from the listing in Armor's Application.  In categories (i), (j) and (k), Armor would limit the government's production of the interview memoranda voluntarily disclosed by Armor  to "relevant portions."  Armor App. at 8.  No such limitation is appropriate.  These memoranda were prepared with the intention of disclosing them to the government so the memoranda were never privileged.  *United States v. Cote*, 456 F.2d 142, 145 n.3 (8th Cir. 1972) (citing *United States v. Colton*, 306 F.2d 633, 638 (2d Cir. 1962)); *Fed. Trade Comm'n v. TRW, Inc.*, 479 F. Supp. 160, 163 (D.D.C. 1979).  Alternatively, any privilege that may have covered these memoranda at one time was waived as to third parties by voluntary disclosure to the government.  *Thompson*, 562 F.3d at 394-96.  And the government in this case is not contesting the relevancy of any portion of these interview memoranda.  Gov't Resp. at 40.  Therefore, the Court should direct the government to deliver to the *Goncalves* defendants the complete versions of all the interview memoranda described in categories (i), (j) and (k) in the Armor Application.

> **D.     The *Goncalves* Defendants Are Entitled To Prompt Discovery Of The Remaining Categories Of Bistrong-Related Armor Documents, Subject To A *Thompson* Form of Protective Order.**

In addition to the above-described sixteen categories of Armor documents, the *Goncalves* defendants are entitled to discovery of the remaining Bistrong-related documents that were voluntarily disclosed to the government.  Armor voluntarily disclosed Bistrong's email files, his

hard drive, and at least 33 boxes of documents that had been in Bistrong's office.  Armor App. at 3-4;  Gov't Resp. at 42.[4]

There is simply no justification for the convoluted two-step procedure prescribed in the protective order proposed by Armor, *see* Armor App., Ex. D, by which the *Goncalves* defendants would receive access only to the above-referenced sixteen categories of Armor documents unless and until the defendants demonstrated – to the satisfaction of Armor's counsel – a need for additional documents.  Such a limitation on discovery is especially unwarranted where Armor has made no showing whatsoever that these documents contain privileged or proprietary information.   Defendants are entitled to review these electronic and hard-copy documents themselves and should not be required to rely on searches done by Armor for the government, or on searches to be done in the future by Armor's counsel.  Defendants' liberty interests are at stake, and they should not have to rely on the work of strangers in support of their defenses. Moreover, under the two-step procedure proposed by Armor's counsel, in order to access Bistrong's email, hard drive and office documents at all the *Goncalves* defendants will have to submit to Armor's counsel "narrowly tailored requests . . . for additional information that they demonstrate is necessary to their defense."  *Id.*  May 12, 2010 WilmerHale Letter to DOJ at 2. Not only would such a procedure require disclosure of the defendants' mental impressions and defense strategies to WilmerHale, apparently it would be the arbiter of what information defendants "needed" to defend themselves.   Armor's lawyers, with all due respect, are ill-equipped to decide what is needed for the Mushriquis' defense.

---

[4] Armor also produced electronic documents that "belonged to Bistrong or were created or sent by him."  *Id.* at 3. Thus, defendant's requests encompass Bistrong-related electronic documents regardless of whether these documents were stored in Bistrong's computer, the Armor servers, or on the computers of other Armor employees.

The form of protective order entered by this Court following remand from the Court of Appeals in the *Thompson* is a more appropriate vehicle for protecting Armor's residual interests in the documents it voluntarily disclosed to the government while preserving the fair trial rights of the *Goncalves* defendants.  All the Bistrong-related Armor documents in the possession of the government – beyond the sixteen categories discussed in Section C above, would be delivered to the defendants all at once, eliminating the need for the defendants to reveal their defense strategies to strangers.  On the other hand, procedures are prescribed for the pre-trial use of these documents that are more than sufficient to protect any privileged or proprietary information that may still be contained in those documents.  This form of order will "protect [Armor's] interest in confidentiality, albeit in a manner consistent with [the Mushriquis'] right to a fair trial and the government's *Brady* and Rule 16 obligations to [these defendants]."  *Thompson*, 562 F.3d at 396.

## CONCLUSION

Armor's Application For Relief is due to be denied.  Moreover, the Court should direct the government immediately to produce to the *Goncalves* defendants the sixteen categories of Bistrong-related documents that even Armor admits are non-privileged and material.  The Court should also issue a protective order, in the form of Attachment A hereto, which is modeled on the Protective Order entered by this Court following remand in the *Thompson* case.  The government should then be directed by the Court to deliver to the *Goncalves* defendants all remaining Bistrong-related documents, not falling within the above-mentioned sixteen categories.

Dated: June 21, 2010                    Respectfully submitted,


                               _____/s/_____

                          By:   David S. Krakoff (D.C. Bar No. 229641)
                                James T. Parkinson (D.C. Bar No. 480521)
                                Lauren R. Randell (D.C. Bar No. 503129)
                                Mayer Brown LLP
                                1999 K Street, NW
                                Washington, D.C.  20006-1101
                                (202) 263-3000

                                *Counsel for Defendant John M. Mushriqui*

                               _____/s/_____

                          By:   Charles S. Leeper (D.C. Bar No. 310367)
                                Drinker Biddle & Reath LLP
                                1500 K Street, NW, Suite 1100
                                Washington, D.C.  20005
                                (202) 842-8877

                                Barry Gross (admitted *pro hac vice*)
                                Drinker Biddle & Reath LLP
                                18th & Cherry Streets
                                Philadelphia, P.A.  19103-6996
                                (215) 988-2872

                                *Counsel for Defendant Jeana Mushriqui*

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on June 21, 2010, I electronically filed the foregoing **John and Jeana Mushriquis'**

**Opposition to Armor Holdings, Inc.'s Application for Relief** using the CM/ECF system,

which will send notification of such filing to the counsel of record in this matter who are

registered on the CM/ECF.


_____/s/_____

Lauren R. Randell (D.C. Bar No. 503129)